(39)

FILED

FEB - 7 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1      UNITED STATES BANKRUPTCY COURT

2      EASTERN DISTRICT OF CALIFORNIA

3         SACRAMENTO DIVISION

4

5   In re:                        )
                                  )
6   PONCE NICASIO BROADCASTING,   )   Case No. 04-26256-B-7
    LP,                           )
7                                 )
         Debtor.                  )
8   _____ )
                                  )
9   BRUCE FOX,                    )
                                  )   Adv. No. 06-02228-B
10          Plaintiff,            )
                                  )
11  vs.                           )   D.C. No. SOC-1
                                  )
12  PONCE NICASIO BROADCASTING,   )
    INC, et al.,                  )
13                                )
         Respondent(s).           )   Submitted August 21, 2007
14  _____ )

15

16            **MEMORANDUM DECISION**

17      Moving parties Daniel Briggs, individually and as owner of

18  the Daniel Briggs IRA; Jordan Briggs, individually and as owner

19  of the Jordan Briggs IRA; Jessica Briggs, individually and as

20  owner of the Jessica Briggs IRA, (Jordan Briggs and Jessica

21  Briggs appearing through their parent Daniel Briggs); John Bailey

22  individually and as owner of the John Bailey IRA; Kathleen

23  Bailey, individually and as owner of the Kathleen Bailey IRA;

24  Kristine C. Bailey, individually and as owner of the Kristine

25  Bailey IRA; Steven C. Bailey as parent and guardian for Kate

26  Bailey, individually and as owner of the Kate Bailey IRA, and

27

28                    -1-

Jerry Zanelli (the "Former Partners") ask the court to grant them summary judgment in this adversary proceeding. Plaintiff Bruce Fox opposes the motion. For the reasons stated herein, the Former Partners' motion for summary judgment filed on June 26, 2007 (Dkt. 80) (the "Former Partners' PNB LP SJ Motion") is granted in part.

The Former Partners' PNB LP SJ Motion was filed on June 26, 2007, initially set for hearing on July 24, 2007. After one continuance, the court held a final hearing in Sacramento, California on August 21, 2007. At the conclusion of the hearing, the matter was taken under submission.

This is a core proceeding and the court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157. Venue is proper in this court under 28 U.S.C. § 1409. There is no dispute concerning jurisdiction, venue or core status.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

On June 17, 2004 debtor Ponce Nicasio Broadcasting ("PNB LP"), a limited partnership, commenced the above captioned voluntary chapter 7 case (the "PNB LP Case"). Thomas A. Aceituno was appointed trustee. On September 28, 2005, the court approved an agreement between the trustee and Plaintiff by which the trustee assigned his avoidance powers in the PNB LP Case to Plaintiff.

On June 17, 2004 debtor Ponce Nicasio Broadcasting Inc. ("PNB Inc."), the general partner of PNB LP, also commenced a voluntary chapter 7 case, no. 04-26255-B-7 (the "PNB Inc. Case). Thomas A. Aceituno was appointed trustee.  On September 28, 2005, the court approved an agreement between the trustee and Plaintiff by which the trustee assigned his avoidance powers in the PNB Inc. Case to Plaintiff.

On June 16, 2006, Plaintiff filed two identical (except for case references, caption, etc.) complaints in the PNB Inc. Case and the PNB LP Case.  The complaint in the PNB LP Case commenced the instant adversary proceeding, and the complaint in the PNB Inc. Case commenced Adversary Proceeding 06-2227-B.  Although both complaints lump PNB Inc. and PNB LP together under the term "Debtors," the above-captioned complaint seeks in part avoidance of alleged fraudulent transfers made by PNB LP to the Former Partners.  Former partner Daniel Briggs as parent and guardian of Jordan Briggs and Jessica Briggs filed an answer on November 9, 2006.  Former partner John Bailey, Kathleen Bailey, Kristine Bailey, Steven C. Bailey, and Kate Bailey filed an answer on December 1, 2007.

The Former Partners have also filed a motion for summary judgment in adversary proceeding 06-2227-B (the "Former Partners' PNB Inc. SJ motion") that is identical to the Former Partners PNB LP SJ Motion.  The court has rendered a decision on the Former Partners' PNB Inc. SJ Motion concurrently with its decision on the Former Partners' PNB LP SJ Motion.

-3-

## I.   FACTS

The dispute between Plaintiff and the Former Partners arises out of a business relationship among Plaintiff, PNB LP, and PNB Inc.  PNB LP was formed for the purpose of managing a local television station.  PNB Inc. was formed to act as managing and general partner of PNB LP.  In the mid-to-late 1990s PNB LP entered into negotiations to sell the television station to Paxson Communications ("Paxson").  PNB LP also entered into three agreements with Plaintiff, an Affiliation Agreement (dated May 26, 1995), a Time Brokerage Agreement (dated September 6, 1996), and an Option Agreement (dated September 6, 1996).

Following the execution of the three agreements, Plaintiff and PNB LP disagreed over whether Plaintiff was entitled to commissions based on the agreements.  Plaintiff sued PNB LP and PNB Inc.  In May 1998 the El Dorado County Superior Court entered judgment in favor of Plaintiff, awarding him $38,333.00 under the Affiliation Agreement and $53,550.00 under the Time Brokerage Agreement.  The superior court also granted declaratory relief stating that Plaintiff would be entitled to a three percent commission under the terms of the Option Agreement in the event that the television station was sold "under" the terms of the September 6, 1996 Option Agreement.  The California Court of Appeal affirmed the trial court decision on April 17, 2000, and on May 16, 2000 PNB LP and PNB Inc. satisfied the money judgments.

The declaratory relief awarded by the superior court, however, continued to be a point of contention between Plaintiff and the Ponce Nicasio entities.  Concurrently with the litigation between Plaintiff and PNB LP and PNB Inc., PNB LP had also been involved in litigation with Paxson.  Paxson and PNB LP settled their dispute in March, 2000.  The sale of the television station closed in June, 2000.  PNB LP then took the position that the sale of the television station did not occur "under" the September 6, 1996 Option Agreement and that Plaintiff was not entitled to a commission.  Plaintiff disagreed and sought to enforce the declaratory judgment.  On June 21, 2000, Plaintiff applied for and obtained an order for examination from the El Dorado County Superior Court.  The order for examination was issued on June 22, 2000.

PNB LP then applied for a temporary restraining order to halt Plaintiff's attempt to collect the commission.  On August 28, 2005 the El Dorado County Superior Court vacated its prior order for examination and enjoined Plaintiff from taking further action to collect the commission.  The superior court also directed the parties to proceed by evidentiary hearing under California Civil Procedure Code Section 724.050 to resolve the issue of whether Plaintiff's judgment had been satisfied.  The date for the evidentiary hearing was set for March 13, 2001.

Prior to obtaining the restraining order PNB LP had started a process by which it intended to buy out the Former Partners, who were limited partners of the PNB LP at the time.  PNB LP

hired an accountant to value the capital balance of the
partnership and assess the value of a one percent interest.  The
preliminary capital balance was valued at $13,709,703.38.   Each
one percent interest was initially valued at $137,097.03.   PNB LP
then reduced the value of each one percent interest to
$130,097.03, so as to set aside $700,000.00 in the event that
Plaintiff were to be awarded a commission following the March
2001 evidentiary hearing.  The Former Partners agreed to accept
the reduced valuation of their interests.  The Former Partners
held 30.6% of the limited partnership interests at the time of
the buyout transaction.  PNB LP transferred funds from its
accounts to the Former Partners.  In exchange for the transfer of
funds to each of the Former Partners, PNB LP received a transfer
of the recipient Former Partners'' limited partnership interest,
and each recipient Former Partner executed and delivered to PNB
LP a mutual and general release and waiver.  The funds
transferred to the Former Partners totaled $3,980,969.12.   The
buyout transactions were concluded as of August 31, 2000.

Following the transfers to the Former Partners, PNB Inc.
held funds totaling $446,871.43 in accounts under its name.   PNB
LP held funds totaling $3,994.567.44 in accounts under its name.
Thereafter, PNB Inc. and PNB LP used the remaining funds to make
stock purchases and to purchase investments on the stock market.
Some funds were also disbursed from one or both PNB LP and PNB
Inc. to partners who remained in the partnership.  Plaintiff also
asserts that the disbursement of funds to the remaining partners

are also fraudulent transfer, but whether those transfers were fraudulent is the subject of the identical summary judgment motions filed under docket control number PP-2 on the court's dockets in the above-captioned PNB LP Case and in the PNB Inc. Case.

As of the end of 2000, the stock market investments began a decline in value that would continue for over a year.  As of the end of 2000, PNB Inc. and PNB LP held a total of approximately $2,000,000.00 in their accounts.  As of the end of March 2001, PNB Inc. and PNB LP collectively held a total of approximately $1,300,000.00 in their accounts.  As of June 2001, these assets had appreciated to $1,800,000.00.  As of August 2001, PNB Inc. and PNB LP held a total of approximately $900,000.00 in their accounts.  During the latter half of 2001, the assets of PNB LP and PNB Inc. dwindled to almost nothing.

In August 2001, Plaintiff filed another action in El Dorado County Superior Court, seeking additional payment under the Time Brokerage Agreement based on the passage of time from the May 1998 judgment.  The superior court entered judgment for Plaintiff in the amount of $77,350.00 in July 2003.

Also in July 2003 the El Dorado County Superior Court concluded proceedings under California Civil Procedure Code Section 724.050, finding that the sale of the television station from PNB LP to Paxson occurred "under" the Option Agreement.  The superior court awarded Plaintiff $531,750.00 plus interest. However, by the time Plaintiff obtained this money judgment,

1 neither PNB LP nor PNB Inc. had sufficient assets to satisfy the
2 judgment.  Both PNB LP and PNB Inc. commenced voluntary
3 bankruptcy cases in June 2004 following Plaintiff's further
4 attempts to enforce the money judgment.

5
6                        II.  ANALYSIS
7      Plaintiff has filed the instant adversary proceeding seeking
8 to set aside transfers made by PNB LP and PNB Inc. to various
9 defendants who were formerly limited partners in PNB LP,
10 including the Former Partners.  As to the Former Partners,
11 Plaintiff seeks to avoid the transfers that PNB LP made to the
12 Former Partners in August 2000, when the Former Partners were
13 allegedly bought out by PNB LP in exchange for a return of their
14 partnership interests and mutual and general releases.  Plaintiff
15 asserts that these transactions were sham transactions and were
16 conducted for the sole purpose of fraudulently attempting to
17 remove assets of PNB LP from his reach before he could
18 successfully obtain and enforce a money judgment.  The Former
19 Partners, not surprisingly, disagree.  They argue that the
20 transfers were not fraudulent under California fraudulent
21 transfer law, that the transfers were made pursuant to the
22 provisions of the limited partnership agreement entitling the
23 Former Partners to a buyout of their interests, and that
24 sufficient assets were not available to satisfy the debt to
25 plaintiff due to unforeseen economic forces.  The Former Partners
26 have requested that the court enter summary judgment in their
27
28                            -8-

favor, arguing that there is no genuine dispute of material fact
as the fraudulent nature of the disputed transactions and that
they are entitled to judgment as a matter of law.

### A.  Applicable Law

#### 1.  Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), made
applicable to this proceeding by Federal Rule of Bankruptcy
Procedure 7056, the moving party on a motion for summary judgment
must demonstrate that there is no genuine dispute of material
fact and that the movant is entitled to judgment as a matter of
law.  Fed R. Civ. P. 56(c).

The initial burden of showing the absence of a material
factual issue is on the moving party.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)("a party seeking summary judgment always
bears the initial responsibility of informing the district court
of the basis for the motion"); De Horney v. Bank of America Nat'l
Trust & Sav. Assoc., 879. F.2d 459, 464 (9th Cir. 1989).  If the
moving party would not ultimately bear the burden of persuasion
at trial, the movant may satisfy this burden by showing that the
record lacks substantial evidence supporting the nonmovant's
claim.  Celotex, 477 U.S. at 324-26.  The movant is not required
to show that it is entitled to relief on each and every element
of the claim for relief.  Instead, if the movant can show that
the plaintiff cannot meet the plaintiff's burden of proving a
single necessary element of the first claim for relief, then the

1   movant can prevail.  See Adickes v. S.H. Kress & Co., 398 U.S.

2   144, 158-60 (1970).

3        However, if the movant would ultimately have the burden of

4   persuasion on an issue, such as successfully raising an

5   affirmative defense to the action, the movant must shoulder the

6   burden usually allocated to the plaintiff by showing evidence

7   that no reasonable jury could disregard.  See Edison v. Reliable

8   Life Ins. Co., 664 F.2d 1130, 1131 (9th Cir. 1981); Herndon v.

9   Massachusetts Gen. Life Ins. Co., 28 F. Supp. 379, 382 (W.D. Va.

10  1998).

11       Once the movant has met its burden of production, the burden

12  shifts to the nonmovant to show that there is in fact a genuine

13  issue for trial.  The nonmoving party must identify specific

14  facts, supported by evidence, affidavits, depositions,

15  interrogatories, sworn or certified copies of documents, or other

16  material contemplated by Federal Rule of Civil Procedure 56(e),

17  which articulate and illustrate the presence of a genuine issue

18  requiring a trial.  Fed R. Civ. P. 56(e); Celotex, 477 U.S. at

19  324.  The evidence presented by the nonmovant must be substantial

20  and the court must consider the nonmovant's substantive burden of

21  persuasion at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S.

22  242, 252 (1986).  Mere assertions do not constitute facts

23  sufficient to require a trial.  Restating a pleading, submitting

24  new pleadings, or simply making assertion by legal memorandum or

25  even by affidavit do not set forth specific facts requiring a

26  need for trial.  The nonmovant must demonstrate that there will

27

28                                  -10-

be testimonial, documentary, or other evidence to support the claim.  See Celotex, 477 U.S. at 324 (1986); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  And "[b]ecause 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge', '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Giles v. GMAC, 494 F.3d 965, 872 (9th Cir. 2007)(quoting Anderson, 391 U.S. at 255).

In addition to showing that there are no genuine issues of material fact that require trial, the movant must also show that it is legally entitled to judgment in its favor.  And to defeat summary judgment, the nonmovant must articulate a viable legal theory that entitles it to relief should it prevail on the facts at trial.  "The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true, to a judgment as a matter of law."  Mc Guire v. Columbia Broadcasting System, Inc., 399 F.2d 902, 902 (9th Cir. 1968).


## 2.  Fraudulent Transfer

Both The Former Partners and Plaintiff agree that Plaintiff is barred from bringing an action to avoid the transfers in dispute here under 11 U.S.C. Section 548(a), as that section is limited to avoidance of transfers made within one year of the

-11-

1  date of the filing of the petition in the parent bankruptcy case.

2  The disputed transfers here occurred in 2000; the parent

3  bankruptcy case was commenced on June 17, 2004.  Instead, both

4  parties agree that Plaintiff may proceed pursuant to California

5  state law governing fraudulent transfers, as permitted by 11

6  U.S.C. Section 544(b)(1), which allows the trustee to avoid any

7  transfer of an interest of the debtor in property that is

8  voidable under applicable law by a creditor holding an allowed

9  unsecured claim.

10      Whether the transfer of an interest or an asset of the

11  debtor to The Former Partners constitutes a fraudulent transfer

12  in this proceeding is governed by California's version of the

13  Uniform Fraudulent Transfer Act (the "UFTA"), codified in

14  California Civil Code Section 3439, et seq.  The UFTA covers

15  transfers that are fraudulent because they were made with actual

16  intent to hinder, delay, or defraud creditors, and transfers that

17  are constructively fraudulent because they were made without

18  receiving reasonably equivalent value in exchange and the debtor

19  was insolvent at that time or became insolvent as a result of the

20  transfer.  An essential element of a cause of action brought

21  under the California UFTA that seeks the avoidance of or other

22  remedies related to an allegedly fraudulent transfer is the

23  existence of an actual transfer made by the debtor to a third

24  party.[1]

25  _____

26      [1]The court notes that the California UFTA also provides for
    a cause of action for remedies related to obligations
27  fraudulently incurred by the debtor.  Here, however, Plaintiff

28                                -12-

A transfer may also be constructively fraudulent with respect to a creditor whose claim arose before or after the transfer if the transfer is made without receiving a reasonably equivalent value in exchange for the transfer, and the debtor either was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. <u>See</u> Cal Civ. Code. § 3439.04(a)(2).   A transfer may be constructively fraudulent with respect to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer.   <u>See</u> Cal. Civ. Code § 3439.05.

Pursuant to California Civil Code Section 3439.04(a)(1), a transfer is fraudulent as to a creditor whose claim arose either before or after the transfer was made if the transfer was made with "actual intent to hinder, delay, or defraud any creditor of the debtor."   Cal Civ. Code § 3439.04(a)(1).   "Actual intent" is informed by a non-exclusive list of eleven factors listed under Section 3439.04(b).   The eleven factors include:

> (1) Whether the transfer or obligation was to an insider.

---

only seeks to avoid fraudulent transfers.

-13-

(2) Whether the debtor retained possession or control of the property after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal Civ. Code § 3439(b)(1)-(11). The eleven factors were added to the statute in 2004. Pursuant to Section 3439.04(c), the addition of the factors to Section 3439 do not constitute a change in applicable law, but are instead declaratory of it and are not intended to affect prior judicial decisions interpreting the statute. The eleven factors do not "create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scale tips in favor of finding actual intent to defraud. [The] list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005).

-14-

The statute also provides a defense to a fraudulent transfer action.  Pursuant Section 3439.08(a), a transfer is not voidable against a person who took in good faith and for reasonably equivalent value or against any subsequent transferee or obligee taking from such a person.  Cal. Civ. Code § 3439.08(a).

### C. The Former Partners Have Not Established Entitlement to Summary Judgment on Their Affirmative Defense

The court's analysis of the Former Partners' entitlement to summary judgment begins with their assertion of an affirmative defense to Plaintiff's claim for relief under Cal. Civ. Code § 3439.08.  The Former Partners assert that they took the transfers from PNB LP in good faith and for reasonably equivalent value. The Former Partners assert that in exchange for the money received from the PNB LP, they transferred their limited partnership interests, gave a release of liability, and provided "substantial funds for the Fox matter."  (Dkt. 83 at 30).  The Former Partners argue that these things constitute "reasonably equivalent value" for the purposes of Section 3439.08(a).

The Former Partners' argument is not persuasive.  The court finds that the buyout transaction was not an exchange for reasonably equivalent value.  Although the California UFTA does not define "reasonably equivalent value" it does define "value" generally:

> Value is given for a transfer or obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of

-15-

the promisor's business to furnish support to the
debtor or another person.

Cal. Civ. Code § 3439.03.  Here, the Former Partners argue that

the buyout transaction should be treated as the satisfaction of

an antecedent debt because PNB LP was "obligated under an express

provision in [the limited partnership agreement] to buy them out.

This pre-existing obligation was an express contractual

requirement, subject to enforcement by the limited partners, and

is an antecedent debt for purposes of determining value."  (Dkt.

83 at 30).

        The argument fails.  First, the court notes that the Former

Partners have not pointed to any specific provision in the

amended limited partnership agreement (Dkt. 85 at 50-76) that

constitutes an express provision to buy out the Former Partners.

The Former Partners do assert that the limited partnership

agreement includes a "'mandatory purchase' provision, whereby the

partnership was required to buy out interests of limited

partners."  (Dkt. 83 at 13).  However, Section XX of the limited

partnership agreement, under the heading "Mandatory Purchase"

(Dkt. 85 at 67) provides that each Class "B" limited partner has

the option to sell his or her interest to either the general

partner or the partnership, and the general partner specifically

agrees to purchase the limited partnership interest.  Class "B"

limited partners are defined elsewhere in the partnership

agreement, and include only Carmen Briggs, Yolanda Nava, and Mary

Ann Alonzo.  (Dkt. 85 at 54).  The Former Partners are not

defined as Class "B" limited partners.  They have also submitted

-16-

no evidence that they are Class "B" limited partners. The other class of limited partners under the agreement are Class "A" limited partners, who are defined as "those persons who purchase Class 'A' units and are admitted as Partners." (Dkt. 85 at 54). The Former Partners have cited no specific provision in the agreement that provides for the mandatory purchase of a Class "A" partnership interest, and the court finds none. As a result, the court finds no provision in the agreement that constituted either an "express contractual requirement" or a "pre-existing obligation" to buy out the Former Partners.

The Former Partners have failed to show that the buyout transaction constituted payment of an antecedent debt. Section 3439.01 of the California UFTA defines a debt as a "liability on a claim." The Former Partners have cited no authority for the proposition that partnership interests generally are considered to be claims against the partnership. "[A]n ownership interest in a debtor partnership differs fundamentally from other rights that might be asserted against the partnership." In re Riverside-Linden Inv. Co., 925 F.2d 320, 323 (9th Cir. 1991). "An ownership interest is not a debt of the partnership. Partners own the partnership subject to the profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership." In re Riverside-Linden Inv. Co., 99 B.R. 439, 444 (9th Cir. BAP 1989), aff'd 925 F.2d 320 (9th Cir. 1991). The Bankruptcy Code also provides some guidance on

-17-

this point.  The Code does not consider partnership interests to be debts, but instead classifies partnership interests as "equity security."  11 U.S.C. § 101(15)(West 2004).

Second, even though a partner's transferable interest in a partnership is considered personal property, <u>see</u> Cal. Corp. Code § 16502, the court finds that the transfer of the limited partnership interests does not constitute a transfer of value for the purposes of the California UFTA.  The legislative comments to the statute state that "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition" of value.  Cal. Civ. Code § 3439.03 (West supp. 1995) legislative committee comment-assembly 1986 addition, ¶ 2 (West supp. 1995); <u>see also</u> <u>In re Lucas Dallas Inc.</u>, 185 B.R. 801, 807-808 (9th Cir. BAP 1995).  The legislative comment also states that the section is "in accord with California cases which hold that fairness of consideration is to be judged from the standpoint of the creditors of the debtor."  Cal. Civ. Code § 3439.03 (West supp. 1995) legislative committee comment-assembly 1986 addition, ¶ 2 (West supp. 1995).  Here, the transfer of funds from the accounts of PNB LP to the Former Partners reduced the size of the pool of assets to which Plaintiff could have looked for the payment of his debt.  The transfer of the limited partnership interests and releases in exchange for the transferred funds are of insignificant value to Plaintiff.  From Plaintiff's point of view, the buyout transaction amounted to nothing more than a reduction in PNB LP's assets.

-18-

Because the court finds that the Former Partners have not shown that they received the transfers of funds from PNB LP in exchange for reasonably equivalent value, the court need not reach the issue of whether the Former Partners received the transfers in good faith.

**D.    The Former Partners Are Entitled to Summary Judgment Under California Civil Code Section 3439.05**

Although the Former Partners have not established entitlement to summary judgment in their favor by way of their affirmative defense, they have established entitlement to summary judgment in their favor on Plaintiff's claim for relief under California Civil Code Section 3439.05.  As discussed above, a transfer is fraudulent under Section 3439.05 if it is made without receiving reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

For the reasons discussed in Sub-part C, <u>supra</u>, the Former Partners have not sustained their initial burden of showing that the debtor transferred funds to them in exchange for reasonably equivalent value.  However, despite the Former Partners' failure to show that the transfers were for reasonably equivalent value, they can still sustain their initial burden of showing entitlement to summary judgment if they present evidence that PNB LP was not insolvent at the time of the transfers and did not become insolvent as result of the transfers, as Plaintiff would bear the ultimate burden of proving a claim for relief under

-19-

Section 3439.05 at trial.  To sustain their initial burden, the Former Partners need only show that Plaintiff cannot prove one essential element of the claim.

The Former Partners have sustained their initial burden of showing that the transfers made in connection with the buyout transaction were not made at a time when PNB LP was insolvent, and they have also presented evidence that PNB LP did not become insolvent as a result of the transfers.  Under the California UFTA, a debtor which is a partnership is insolvent if "at fair valuations, the sum of the partnership's debts is greater than the aggregate of all of the partnership's assets and the sum of the excess of the value of each general partner's nonpartnership assets over the partner's nonpartnership debts.  Cal. Civ. Code § 3439.02(b).  A judgment debtor's insolvency is also relevant to whether a transfer was made with actual intent to delay hinder an defraud a creditor.  See Cal. Civ. Code § 3439.04(b)(9).

Here, the Former Partners have submitted the declaration of Ron V. Briggs, President of PNB Inc. and a limited partner of PNB LP, as evidence that PNB LP was not insolvent.  The declaration states that as of June 30, 2003, the total preliminary capital balance of PNB LP as determined by CPA Robert Bell was $13,709.703.38.  This statement is supported by a copy of the calculation of the preliminary capital balance, dated August 24, 2000.  (Dkt. 85 at 116). The declaration further states that as of August 31, 2000, after the transfers to the Former Partners, PNB Inc. held $446,871.43 in its account, and PNB LP held

-20-

$3,9994,567.44.  (Dkt. 82 at 8).  This statement is supported by copies of account statements of both PNB LP and PNB Inc. for the month ending August 31, 2000.  (Dkt. 85 at 130).  The declaration also states that neither PNB Inc. or PNB LP had material debts at the time.  (Dkt. 82 at 8).[2]  Through this evidence the Former Partners have sustained their initial burden on the insolvency prong of Section 3439.05.

Plaintiff's opposition fails to defeat the Former Partners' request for summary judgment on any claim under Section 3439.05. Plaintiff has failed to come forward with substantial evidence that shows the existence of a genuine issue that requires a trial.  Plaintiff's argument that PNB LP became insolvent immediately following the transfers to the Former Partners rests on his theory that both PNB Inc. PNB LP ceased to exist after the Former Partners were bought out.  Plaintiff argues that not only were the Former Partners bought out, but those partners who the Former Partners allege remained in the partnership, including Ron V. Briggs, Ronald J. Briggs, Brian Briggs, and Alexander Briggs, also took distributions amounting to the remainder of PNB LP's assets.  Plaintiff argues that the remaining partners simply continued to use the accounts of PNB Inc. and PNB LP as either their personal accounts or the accounts of "some form of general partnership, with Ron Briggs installed in as the general partner, with full authority to disburse assets as he chose, without

---

[2]Even including Plaintiff's eventual claim of $531,750.00, the assets of PNB Inc. and PNB LP far exceeded the amount of that claim.

-21-

regard to PNB LP or PNB Inc. creditors." (Dkt. 93 at 19). Plaintiff argues that the "new" entity was a personal investment company that engaged in high-risk investments. (Dkt. 93 at 8). Plaintiff also argues that PNB LP ceased to exist because PNB Inc., as the general partner of the limited partnership, ceased to exist when it "repurchased all of its own stock, essentially devouring itself and creating a non-entity." (Dkt. 93 at 7).

Plaintiff makes a number of assertions and allegations regarding the insolvency of PNB LP and PNB Inc., but he fails to present substantial evidence that they were insolvent at the time of the transfers to the Former Partners or that they became insolvent as a result of the transfers. Plaintiff's only evidence that PNB Inc. and PNB LP ceased to exist as "viable entities" following the transfers consists of excerpts deposition testimony of Ron V. Briggs. (Dkt. 93 at 23-50). Plaintiff points to Briggs' statement that all shares of stock in PNB Inc. were signed over to PNB Inc. at the time of the transfer to The Former Partners and remained in the treasury (Dkt. 93 at 30) as evidence that PNB Inc. ceased to exist. Plaintiff also points to Briggs' statements that records for the partnership or corporation were not maintained or were lost due to obsolescence of the computer software used to maintain them (Dkt. 93 at 23, 76) as evidence that neither the corporation nor the partnership continued to exist after the transfers. Plaintiff asserts that it is "fundamental law" that in order to exist the entities must have maintained records, had shareholders, and conducted

directors' or shareholders' meetings.  Plaintiff also argues that
because the limited partnership agreement states that the purpose
of the limited partnership was to "acquire, own, operate,
develop, manage or otherwise engage in the business relating to
the operating of a television station," (Dkt. 85 at 51), the
partnership ceased to exist after the television station was sold
to Paxson and the partnership agreement was not amended to
reflect a new purpose.  Plaintiff asserts that his evidence shows
that there is a genuine issue of material fact as to whether PNB
LP was solvent after the transfers to the Former Partners.

The argument fails.  Despite the allegedly fundamental
nature of the law underpinning Plaintiff's theories of corporate
and partnership dissolution and insolvency, Plaintiff has cited
no legal authority that supports his assertion that a corporation
is automatically dissolved when its directors or officers lose or
fail to maintain corporate records, or when it redeems all shares
of its stock and retains the shares without offering them for
sale.  The court is unaware of any such authority.  Plaintiff's
argument is probably derived from the concept of "piercing the
corporate veil."  However, "piercing the corporate veil" does not
destroy the entity; it only creates liability to the extent
necessary to prevent a fraud.  "When it is claimed that a parent
corporation should be liable because it is the alter ego of its
subsidiary, equity commands that the corporate wall be breached.
Yet the wall remains; the parent is liable through the acts of

-23-

the subsidiary, but as a separate entity." <u>Mesler v. Bragg</u>
<u>Management Co.</u>, 39 Cal.3d 290, 301, 702 P.2d 601, 607 (1985).

Thus, Plaintiff's argument that a theory of alter ego
liability should be applied to a theory of dissolution fails.
Plaintiff has also not shown that either PNB LP or PNB Inc. were
dissolved under accepted theories of dissolution.  Under
California law, dissolution of a corporation can be either
involuntary and accomplished by court proceeding, <u>see</u> Cal. Corp.
Code § 1800 et. seq., or voluntarily accomplished by the election
of the board of directors or shareholders, <u>see</u> Cal. Corp. Code §
1900 et. seq.  Plaintiff has submitted no court decree or order
winding up and dissolving PNB Inc. that evinces an involuntary
dissolution of the corporation.  <u>See</u> Cal. Corp. Code § 1804.  Nor
has Plaintiff submitted any certificate of dissolution that
evinces a voluntary dissolution of the corporation.  <u>See</u> Cal.
Corp. Code § 1905.

Similarly, under California law a limited partnership is
dissolved and its affairs are wound upon the first to occur of
the four following events:

1.)  At the time specified, or on the occurrence of
events provided in the partnership agreement.  Cal.
Corp. Code § 15681(a).

2.)  Upon the written consent of all general partners
and a majority in interest of the limited partners,
unless otherwise provided in the partnership agreement.
Cal. Corp. Code § 15681(b).

-24-

3.) Unless otherwise provided in the partnership agreement, when a general partner ceases to be a general partner pursuant to the provisions of Cal. Corp. Code § 15642, unless (1) there is one or more remaining general partners that agree to continue the business, or (2) a majority in interest of the limited partners agree in writing to continue the partnership and, within six months after the last remaining general partner ceases to be a partner, admit one or more new general partners. Cal. Corp. Code § 15681(c). If the general partner is a corporation, the corporation ceases to be a general partner pursuant to Corporations Code Section 15642 upon the filing of a certificate of dissolution or its equivalent. Cal. Corp. Code § 15642(h).

4.) Entry of a judicial decree of dissolution. Cal. Corp. Code. § 15681(d).

Plaintiff has provided no evidence that any of the events listed above has occurred that caused either PNB Inc. or PNB LP to "cease to exist" immediately after the transfers to the Former Partners. Rather, it appears that Plaintiff confuses theories of alter ego liability and partner liability with theories of dissolution. Whether or not a director or officer is liable for the actions of a corporation, and whether or not a partner is liable for the actions of a partnership such that the entities intended to limit liability should be disregarded does not

-25-

necessarily lead to a conclusion that the corporation or partnership does not exist.  Nor does it lead to a conclusion that informs the issue at hand here, which is whether the limited partnership was insolvent before the transfers to the Former Partners or became insolvent as a result of the transfers to the Former Partners.  Whether Ron Briggs or any other person subsequently treated funds held in the accounts of PNB LP or PNB Inc. as the funds of a separate business venture or even his own personal funds does not compel the conclusion that either PNB Inc. or PNB LP was insolvent at the time of the buy out transactions or became insolvent as a result of them.

As a result, the court finds that in response to the Former Partners' initial showing of entitlement to summary judgment on Plaintiff's claim for relief under Cal. Civ. Code § 3439.05, Plaintiff has not come forward with substantial evidence to show either that PNB LP was insolvent at the time of the disputed transfers or that PNB LP became insolvent as a result of them. Furthermore, the evidence in the record shows that the Former Partners are entitled to judgment as a matter of law. Accordingly, the Former Partners are entitled to summary judgment that Plaintiff take nothing by his claim for relief under Cal. Civ. Code § 3439.05.

**E. The Former Partners Are Entitled to Summary Judgment Under California Civil Code Section 3439.04(a)(2).**

The Former Partners have also established that they are entitled to summary judgment on Plaintiff's claim for relief

-26-

1   under California Civil Code Section 3439.04(a)(2).  As discussed

2   above, pursuant to Section 3439.04(a)(2), a transfer is

3   fraudulent as to a creditor who claim arose either before or

4   after the transfer was made if the transfer was made without

5   receiving a reasonably value in exchange for the transfer or

6   obligation, and the debtor either was engaged or was about to

7   engage in a business or a transaction for which the remaining

8   assets of the debtor were unreasonably small in relation to the

9   business or transaction, or the debtor intended to incur or

10  believed or reasonably should have believed that it would incur

11  debts beyond its ability to pay as they came due.

12      For the reasons discussed in Sub-part C, <u>supra</u>, the Former

13  Partners have not sustained their initial burden of showing that

14  the debtor transferred funds to them in exchange for reasonably

15  equivalent value.  However, despite the Former Partners' failure

16  to show that the transfers were for reasonably equivalent value,

17  they can still sustain their initial burden of showing

18  entitlement to summary judgment if they present evidence that

19  would lead to a finding in their favor under either Section

20  3439.04(a)(2)(A) or (B), as Plaintiff bears the ultimate burden

21  of proving a claim for relief under Section 3439.04(a)(2) at

22  trial.  To sustain their initial burden, the Former Partners need

23  only show that Plaintiff cannot prove one essential element of

24  the claim.

25      The Former Partners have sustained their initial burden of

26  showing that at the time PNB LP made the transfers to them, PNB

27

28                                  -27-

1   LP was not about to engage in a business or transaction for which

2   its remaining assets were unreasonably small, or that PNB

3   intended to incur or reasonably believed that it would incur

4   debts beyond its ability to pay as they came due.  As discussed

5   in Sub-part D, supra, the Former Partners have submitted evidence

6   that both PNB Inc. and PNB LP had substantial funds in their

7   accounts following the transfers to The Former Partners in August

8   2000.  the Former Partners have also submitted evidence that the

9   limited partners whose interests were not bought out used the

10  funds in the accounts of PNB LP and PNB Inc. to purchase

11  investments on the stock market.  (Dkt. 82 at 7).  Although the

12  value of the investments acquired would drop significantly during

13  2001, the Former Partners assert that they did not incur debt.

14  The Former Partners have also presented evidence that the decline

15  in value of the investments during 2001 was unexpected, and that

16  during 2000 and most of 2001 PNB LP held funds in its accounts

17  sufficient to pay any claim that Plaintiff might obtain.  (Dkt.

18  82 at 10).

19      Plaintiff's opposition fails to defeat the Former Partners'

20  request for summary judgment on any claim under Section

21  3439.04(a)(2).  Plaintiff has failed to come forward with

22  substantial evidence that shows the existence of a genuine issue

23  that requires a trial.  Although the court has found that the

24  Former Partners have not established that the transfers made to

25  them were for reasonably equivalent value, Plaintiff fails to

26  address either Section 3439.04(a)(2)(A) or (a)(2)(B) in his

27

28                                -28-

response.  Plaintiff does present evidence in the form of the declaration of CPA Jeffrey Rogers (the "Rogers Declaration") that after PNB LP made the transfers to the Former Partners, the investment patterns of the "entities" shifted from investments in mutual funds to "individual stocks and very large margin borrowing to leverage the accounts."  (Dkt. 99 at 2).  The Rogers Declaration does not present any evidence regarding the degree to which the remaining limited partners or the general partner borrowed on margin, and as a result fails to show sufficient evidence that raises an genuine issue for dispute as to PNB LP or PNB Inc.'s remaining assets after the transfers to the Former Partners were unreasonably small for the investment strategy undertaken, or whether the investment strategy involved incurring debt that exceeded the remaining assets such that the debt could not be repaid when it came due.  Furthermore, the Rogers Declaration is not sufficient to support Plaintiff's assertion in response to the Former Partners' statement of undisputed facts that "Ron's new business obviously was not adequately funded for a high-risk venture."  (Dkt. 95 at 6).  Instead, Plaintiff again relies on his argument that both PNB LP and PNB Inc. "ceased to exist" after the transfers to The Former Partners.  For the reasons stated in Sub-part D, _supra_, the court has found that argument to be unpersuasive.

    As a result, the court finds that in response to the Former Partners' initial showing of entitlement to summary judgment on Plaintiff's claim for relief under Cal. Civ. Code §

-29-

3439.04(a)(2), Plaintiff has not come forward with substantial evidence that at the time of the transfers PNB LP and PNB Inc. were about to engage in a business or transaction for which the remaining assets of either entity would prove unreasonably small, or that either PNB LP or PNB Inc. intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they came due.  The evidence in the record further shows that the Former Partners are entitled to judgment as a matter of law.  Accordingly, the Former Partners are entitled to summary judgment that Plaintiff take nothing by his claim for relief under Cal. Civ. Code § 3439.04(a)(2).

**F. The Former Partners Are Entitled to Summary Judgment Under California Civil Code Section 3439.04(a)(1)**

Finally, the court turns to the question of whether there is a genuine issue of material fact as to whether PNB LP made the transfers to the Former Partners with "actual intent to hinder, delay, or defraud a creditor" under California Civil Code Section 3439.04(a)(1).  As discussed above, "actual intent" is informed by eleven factors set forth in Section 3439.04(b), and listed in Sub-part A(2), supra.  In analyzing each factor, the court considers first whether the Former Partners have met their initial burden of showing evidence that would entitle them to judgment that Plaintiff take nothing by this claim, and then considers whether Plaintiff has presented evidence sufficient to show that there is a genuine issue as to the actual intent of PNB

-30-

LP or PNB Inc., bearing in mind that Plaintiff would bear the
burden of proving actual intent at trial.

Factor 1: Whether the transfer was to an insider. The
Former Partners concede that, as limited partners at the time the
transfers were made, that they were insiders. Plaintiff agrees
and does not dispute this assertion.

Factor 2: Whether the debtor retained possession or control
of the property transferred after the transfer. The Former
Partners assert that neither PNB LP nor PNB Inc. retained control
of the funds transferred to The Former Partners after the
transfers. Ron V. Briggs' declaration states that "PNB
maintained no interest in the funds it disbursed, and, likewise,
the departed limited partners' association with PNB ended."
(Dkt. 82 at 7).

Plaintiff disputes the Former Partners' assertion, but
Plaintiff has not presented evidence that raises a genuine issue
as to whether PNB LP or PNB Inc. retained control of the
transferred funds. Plaintiff argues that under the terms of the
releases executed by the Former Partners, they retained an
interest in future profits. However, whether the Former Partners
retained an interest in future profits of either PNB LP or PNB
Inc. has no relation to whether either PNB entity retained
control of funds already transferred to the Former Partners.
Plaintiff also again raises his contention that the PNB entities
no longer existed after the transfers, a contention that the

court, for reasons previously described in this decision, has found not to be a genuine issue for trial.

Factor 3: Whether the transfer was disclosed or concealed. The Former Partners assert and have presented evidence that the ownership structure of PNB LP was a matter of public record both through its Federal Communications Commission License and through court records related to the ongoing litigation between Plaintiff and the PNB entities.  (Dkt. 82 at 10).  The Former Partners assert that the transfers to them were not concealed.

Plaintiff's opposition does not address this factor and he presents no evidence that the transfers were concealed.

Factor 4: Whether before the transfer was made, the debtor had been sued or threatened with suit.  The Former Partners concede that prior to the transfers, Plaintiff had sued PNB LP and PNB Inc. in El Dorado County Superior Court, and had obtained both a money judgment against the PNB LP and PNB Inc. and a declaratory judgment that Plaintiff was entitled to a three percent commission if the television station were sold "under" the terms of the September 6, 1996 Option Agreement.  Upon the sale of the television station in June 2000, Plaintiff attempted to enforce the judgment by applying for and receiving an order for examination in the superior court.  PNB LP and PNB Inc. disputed Plaintiff's claim for payment on the judgment and sought to have the order for examination vacated.  The order was not vacated until August 28, 2000, three days before the Former Partners executed the agreements transferring their limited

-32-

partnership interests back to PNB LP in exchange for the transfers.  Upon vacating the order, the superior court also issued a scheduling order for the purpose of resolving the matter of whether Plaintiff's judgment had been satisfied.  The evidence in the record shows that PNB LP and PNB Inc. were threatened with suit for the enforcement of the judgment in Plaintiff's favor prior to the transfers.

The Former Partners' assertion that Plaintiff improperly obtained the order for examination and that the order was later vacated is not relevant to an analysis of this factor, as the factor only asks whether debtor had been sued or threatened with suit.

Plaintiff does not dispute the Former Partners' account of events, only their significance.  Plaintiff emphasizes that on May 29, 1998, more than two years before the transfers, he had obtained a judgment against the PNB LP and PNB Inc., a copy of which is included in The Former Partners' exhibits.  (Dkt. 85 at 4).  However, the significance of or the weight to be given the facts underpinning this factor is not a question of fact that requires a trial, but a legal question.  Accordingly, the court finds that there is no genuine issue of fact as to this factor that requires a trial.

Factor 5:  Whether the transfer was of substantially all the debtor's assets.  The Former Partners have presented evidence that the transfers made to them did not consists of substantially all of the assets of either PNB LP or PNB Inc.  As discussed

-33-

elsewhere in this decision, the Former Partners have presented evidence that substantial funds remained in PNB LP and PNB Inc.'s accounts following the transfers.

Plaintiff does not address this factor in his opposition. Plaintiff has also presented no evidence that the transfers made to the Former Partners here consisted of substantially all of the assets of PNB LP or PNB Inc. Plaintiff has not shown that there is any genuine issue as to this factor that requires a trial.

Factor 6: Whether the debtor absconded. The Former Partners assert that there is no evidence that either PNB LP or PNB Inc. absconded. Plaintiff does not address this factor in his opposition, and has presented no evidence that either PNB LP or PNB Inc. absconded. As to this factor, Plaintiff has not shown the existence of a genuine issue for trial.

Factor 7: Whether the debtor removed or concealed assets. The Former Partners assert that the assets of both PNB LP and PNB Inc. were not removed or concealed. They assert that there is no evidence that assets were removed or concealed. As discussed elsewhere in this decision, The Former Partners have presented evidence that substantial funds remained in accounts held by PNB LP and PNB Inc. at the time of the transfers.

In opposition, Plaintiff continues to argue that the PNB entities did not exist after the transfers. Presumably, Plaintiff disputes The Former Partners' position on this factor because, in Plaintiff's view, neither PNB Inc. nor PNB LP could conceal or remove assets if neither entity existed. However, for

-34-

reasons discussed elsewhere in this decision, Plaintiff has not presented any evidence that raises a genuine issue as to whether PNB LP or PNB Inc. continued to exist or were dissolved after the transfers.  As to this factor, Plaintiff has failed to present sufficient evidence that shows there is a genuine issue for trial.

Factor 8: Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.  For the reasons stated in Sub-part C, supra, the court has found that the Former Partners have not carried their initial burden of presenting evidence sufficient to show that PNB LP received reasonably equivalent value for the transfers.  The court has determined as a matter of law that the transaction by which The Former Partners were bought out was not a transfer for reasonably equivalent value for the purposes of the California UFTA.  The same analysis applies to this factor.  As to this factor, the court finds that there is no genuine issue of material fact that the transfers were not made for reasonably equivalent value.

Factor 9: Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.  For the reasons stated in Sub-part D, supra, The Former Partners have sustained their initial burden of showing evidence that neither PNB LP nor PNB Inc. were insolvent at the time of the transfers.  For the same reasons, Plaintiff has failed to show substantial evidence of either PNB entity's

-35-

insolvency at the time of the transfers that raises a genuine issue of material fact requiring a trial. As to this factor, the court finds that there is no genuine issue of material fact that either PNB entity was insolvent at the time of the transfers, or that either entity became insolvent as a result of the transfers.

Factor 10: Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. The Former Partners have carried their initial burden of establishing that there is no evidence in the record that either PNB LP or PNB Inc. incurred substantial debt either shortly before or shortly after the transfers to The Former Partners. Under the evidence submitted by The Former Partners, shortly before the transfers neither PNB entity had incurred a debt that was substantial relative to the assets of the entities. Similarly, neither entity had incurred any debt shortly after the transfers. The evidence in the record shows that any debt that may have been allegedly owed to Plaintiff at the time of the transfers was not substantial in relation to the total remaining assets of PNB LP and PNB Inc. Plaintiff's opposition does not address this element, except to the extent that Plaintiff argues that the PNB entities could not incur debt after the transfers because the entities no longer existed. That argument has been found unpersuasive, however. Plaintiff has not presented evidence that raises a genuine issue of material fact as to this element.

Factor 11: Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets

<u>to an insider of the debtor.</u>  The Former Partners assert that there is no evidence in the record showing that either PNB LP or PNB Inc. transferred the essential assets of the business to a lienholder who transferred the assets to an insider of PNB LP or PNB Inc.  Plaintiff does not address this factor in his opposition, and has presented no evidence that this occurred in this case.

Based on the foregoing analysis, the court finds that Plaintiff has not established that there are any genuine issues of triable fact with regard to either PNB LP or PNB Inc.'s "actual intent" with respect to the transfers made to the Former Partners.  Plaintiff has failed to meet his burden of presenting substantial evidence that shows a genuine issue of material fact as to any of the eleven factors listed under California Code of Civil Procedure Section 3439.04(b), and, accordingly there is no genuine issue of material fact as to PNB LP or PNB Inc.'s actual intent.

Of the eleven factors under Section 3439.04(b), the evidence in the record shows that three of those factors, including the fact that the Former Partners were insiders of PNB LP, the fact that PNB LP and PNB Inc. had been threatened with suit and Plaintiff held a judgment against PNB LP and PNB Inc., and the fact that the PNB LP and PNB Inc. did not receive reasonably equivalent value for the funds received by the Former Partners, weigh in favor of a finding of actual intent on the basis of the evidence in the record.  Eight of the eleven factors, however,

-37-

1  weigh against a finding of actual intent on the basis of the
2  evidence in the record.  Of those eight factors, the  court finds
3  two - the fact that the funds received by the Former Partners did
4  not constitute all of either PNB LP or PNB Inc's assets, and the
5  fact that the neither PNB LP nor PNB Inc. were insolvent at the
6  time that transfers were made to the Former Partners, and that
7  neither became insolvent as a result of the transfers - to be
8  particularly informative with respect to the facts of this case.
9  The court also finds the fact that the Former Partners agreed to
10 accept a reduced valuation of their partnership interests when
11 they were bought out by PNB LP, and the fact that the value they
12 received was reduced specifically for the purpose of setting
13 aside funds that would satisfy any money judgment related to a
14 commission that Plaintiff would eventually obtain, mitigate
15 against the possibility that at the time the Former Partners were
16 bought out that either PNB LP or PNB Inc. intended to hinder,
17 delay, or defraud Plaintiff.  Whether such an intent may have
18 existed at some later time when the assets of PNB LP and PNB Inc.
19 were further reduced is not of consequence as to the transfers
20 made to the Former Partners.  Accordingly, the court finds that
21 the Former Partners' are entitled to summary judgment that
22 Plaintiff take nothing by his claim for relief under Section
23 3439.04(a)(1).

28                                   -38-

## G. The Former Partners Are Entitled to Summary Judgment on Plaintiff's Claim for Turnover

Plaintiff's complaint also seeks turnover of the funds that he alleges were fraudulently transferred to the Former Partners by PNB LP.  Because the court has concluded that Plaintiff shall take nothing by his claim seeking avoidance of the alleged transfers, the Former Partners are also entitled to summary judgment that Plaintiff take nothing by his claim for turnover.

## Conclusion

For the reasons stated in the foregoing memorandum decision, The Former Partners have not shown as a matter of law that they can assert a defense to Plaintiff's claims for avoidance of fraudulent transfers.  The Former Partners are entitled to summary judgment on Plaintiff's claims for avoidance of transfers under California Civil Code Sections 3439.04(a)(1), (a)(2) and 3439.05, and on Plaintiff's claim for turnover, as the court finds that there is no genuine dispute of material fact as to those claims for relief, and the Former Partners have shown that they are entitled to judgment as a matter of law that Plaintiff take nothing by those claims.

The court will issue a separate order.

Dated: FEB - 7 2008

Thomas C. Holman
United States Bankruptcy Judge

-39-